# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DONALD RICHARD CHILDS, )
                                )
                Plaintiff, )    Case No.: 2:18-cv-00316-GMN-VCF
      vs. )
                                )    **ORDER**
BOYD GAMING CORPORATION, )
                                )
               Defendant. )

Pending before the Court is the Motion to Dismiss, (ECF No. 6), filed by Defendant Boyd Gaming Corporation ("Defendant"). Pro se Plaintiff Donald Richard Childs ("Plaintiff")[1] filed a Response, (ECF No. 8), and Defendant filed a Reply, (ECF No. 10).

Also pending before the Court is the Motion to Amend, (ECF No. 20), filed by Plaintiff. Defendant filed a Response, (ECF No. 21), and Plaintiff filed a Reply, (ECF No. 22).

For the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Motion to Amend is **DENIED without prejudice**.[2]

## I.     BACKGROUND

This case arises from alleged violations of Plaintiff's civil rights under 42 U.S.C. § 1981. Plaintiff is an African-American male who has been a member of Defendant's B Connected Players Card Program since 2015. (Compl. ¶¶ 1, 3, Ex. B. to Def.'s Pet. for

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to a standard less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Also pending before the Court is Plaintiff's Motion to Adjudicate Defendant's Motion to Dismiss as a Motion for Summary Judgment, (ECF No. 9), to which Defendant did not respond. The Court finds that summary judgment at this stage is improper. *See Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("Implicit in the 'opportunity to respond' is the requirement that sufficient time be afforded for discovery necessary to develop 'facts essential to justify (a party's) opposition' to the motion."). The Court, therefore, denies Plaintiff's Motion as premature.

Removal, ECF No. 1). Defendant is the parent corporation of the Coast Hotel & Casinos, Inc., which owns the entities doing business as The Suncoast Hotel and Casino ("The Suncoast") and The Orleans. (*See* Certificates of Business, Exs. A, B to Mot. to Dismiss ("MTD"), ECF Nos. 6-1, 6-2).[3]

From May 3, 2017, until January 1, 2018, Plaintiff played craps every day at either The Suncoast or The Orleans. (Compl. ¶ 4). Plaintiff alleges that on multiple occasions throughout this time period, Defendant's floor supervisors, table boxmen, and craps dealers subjected him to active scrutiny as he became the "hot shooter" of the table. (*Id.* ¶¶ 5, 9–10, 26, 39, 45, 80). During these occurrences, Plaintiff alleges the floor supervisors, upon recognizing Plaintiff's presence, would either approach and assume the role of table boxman or substitute out the active boxman with an alternate. (*Id.* ¶¶ 9, 27, 40, 52, 78).

On one of these occasions, Mike, a floor supervisor for The Suncoast, asked the active dealer for a report on Plaintiff, which the dealer provided. (*Id.* ¶¶ 11–12). Plaintiff overheard Mike tell the dealer that he was "ready to go upside [Plaintiff's] head with a baseball bat," and "I'm ready to bust his head until the white meat shows." (*Id.* ¶¶ 13, 15–19). The next night, Plaintiff was playing craps next to Brooke, an African-American friend of Plaintiff's, when an unidentified employee of The Suncoast arrived to ask the active boxman, "isn't that the guy right there that you said you wanted to kick his ass?" (*Id.* ¶¶ 20–21).

On another occasion, Plaintiff got into a verbal argument with Timothy Brown ("Brown"), a floor supervisor at The Orleans, who reprimanded Plaintiff for extending his arms too far onto the craps table. (*Id.* ¶¶ 22–31). A few hours later, Plaintiff contacted the Nevada Gaming Commission and met with Agent Dean Dimaio the next day at The Orleans. (*Id.* ¶¶ 32–33). Plaintiff and Dimaio spoke with Robert, a head floor supervisor, who explained that

---

[3] "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

security concerns justify the establishment's rules with respect to how far gamblers may place their hands on the game tables. (*Id.* ¶ 34).

On October 14, 2017, Plaintiff was at The Orleans playing craps with a group of African-American males when he noticed attention from floor supervisor Jeff Teague ("Teague"). (*Id.* ¶¶ 42–44). Plaintiff further observed Brent, his craps dealer, leaning over the table as Plaintiff's opportunity to roll came up and knocking on the table as if "knocking on a door." (*Id.* ¶¶ 45–47). Later that month, Plaintiff was playing craps at The Orleans when Teague approached, pointed to an African-American male sitting next to Plaintiff and exclaimed "Him! Him! Him right there! Who is that?" (*Id.* ¶¶ 52–56). Teague demanded that a dealer at another table leave his post to observe Plaintiff's table. (*Id.* ¶ 57). The dealer stated "he had no idea who the African-American male was," and Teague responded by continuing to point to the male. (*Id.* ¶¶ 58–59). Plaintiff alleges that this became such a distraction that Plaintiff, the unidentified African-American male, and three other players left the craps table. (*Id.* ¶ 60).

On November 15, 2017, Plaintiff was playing craps at The Orleans with Ronnie, an African-American acquaintance of Plaintiff's, when Brent exclaimed "I'm getting tired of both of you guys." (*Id.* ¶¶ 61–63). Plaintiff alleges that Brent forgot to pay Plaintiff and Ronnie their winnings. (*Id.* ¶ 63). After Ronnie asked Brent about this, Brent responded "I wouldn't [pay] if I didn't have to." (*Id.* 64–66). The next day, Plaintiff was with Ronnie when Ronnie complained to Teague about "the accurate amount of a hard way payment." (*Id.* ¶¶ 67–68). Teague responded "[y]ou are the worst person to come in here! It's agreed on by everyone that works in here! Nobody wants you at their table." (*Id.* ¶ 69).

On another occasion in December 2017, Teague substituted out Plaintiff's craps dealer for another dealer who watched Plaintiff count his money and remarked, "[h]eeey—[i]t's him in that hat! And look, he can count!" (*Id.* ¶¶ 72–79). The next month, Plaintiff was playing at

The Orleans when David, one of the craps dealers who Plaintiff alleges is Jewish, made a comment about Plaintiff's wooden cross necklace. (*Id.* ¶ 81). David commented, "[i]f you're going to pray, you need to straighten your cross first." (*Id.*). On a subsequent occasion, David belittled Plaintiff for his wager amounts. (*Id.* ¶¶ 82–83). Teague approached to announce that Plaintiff "would be the last shooter of the table." (*Id.* ¶ 85). Plaintiff alleges that Teague declined to reprimand David for berating Plaintiff. (*Id.* ¶ 86). Plaintiff switched to an active table and David stood next to the new table's boxman, continuing to belittle Plaintiff. (*Id.* ¶¶ 87–88). At this point, Plaintiff asked Teague "[w]hat was going on?" to which Teague responded "[d]o you have something that you want to address?" (*Id.* ¶¶ 89–90). Plaintiff expressed to Teague that a "number of your personnel are conducting themselves as if they and I have an unresolved personal issue," and again asked Teague, "[w]hat is the issue?" (*Id.* ¶¶ 91–93). Teague replied "nothing." (*Id.* ¶ 94).

Plaintiff filed the instant Complaint on February 7, 2018, asserting a single cause of action for a violation of his civil rights pursuant to 42 U.S.C. § 1981. (Compl. 12:4–13:10). Plaintiff alleges that Defendant's conduct decreased the enjoyment of all "benefits, privileges, terms, and conditions," associated with Plaintiff's membership in Defendant's player's card program. (Compl. 12:16–21). On February 26, 2018, Defendant filed the instant Motion to Dismiss, (ECF No. 6).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Plaintiff's Complaint alleges a single cause of action for discrimination under the Civil Rights Act, 42 U.S.C. § 1981. (*See* Compl. 12:4–13:10). Defendant moves to dismiss on the basis that Plaintiff's Complaint fails to allege a prima facie case of racial discrimination. (Mot. to Dismiss ("MTD") 9:26–10:5, ECF No. 6).

Section 1981 prohibits race-based discrimination with respect to the "benefits, privileges, terms, and conditions of [a] contractual relationship." 42 U.S.C. §1981(b). "In order to evaluate claims of intentional discrimination where intent itself is generally impossible to prove," Ninth Circuit courts employ the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas*. *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). "[I]f the plaintiff satisfies the initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the defendant to prove it had a legitimate non-discriminatory reason for the adverse action." *Id.* "If the defendant meets that burden, the plaintiff must prove that such a reason was merely a pretext for intentional discrimination." *Id.*

To establish a prima facie case of racial discrimination in non-employment contracts, a litigant must show that: "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services," (3) "[he] was denied the right to contract for those services," and (4) "such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class."[4] *Id.* at 1145.

Plaintiff alleges two ways in which Defendant adversely affected the terms of the contractual relationship between the parties: 1) Defendant's employees' poor service and

---

[4] In *Lindsey*, the Ninth Circuit applied this fourth element without deciding whether this element "is required in many or all cases arising in a commercial, non-employment context." *See Lindsey*, 447 F.3d at 1145 (noting that "the Seventh and Sixth Circuits conflict over adaptation of the fourth *McDonnell Douglas* requirement.").

disturbing atmosphere which "drove the Plaintiff out of the establishment during the performance of the contract"; and 2) Defendant's employee's refusal to pay Plaintiff his winnings. (Compl. 13:1–9). Defendant moves to dismiss arguing that Plaintiff does not plausibly allege any infringement by Defendant with respect to Plaintiff's ability to form or enforce a contract. (MTD 10:6–23). Defendant further argues that Plaintiff fails to allege that any disagreements or issues he had with Defendant's employees were racially motivated. (*Id.* 11:1–11).

With respect to Plaintiff's allegations concerning Defendant's poor service and disturbing atmosphere, the Court finds that Plaintiff fails to plausibly allege that Defendant inhibited Plaintiff's contractual rights. To establish the third element of a § 1981 prima facie case, a plaintiff must plead facts suggesting that discrimination resulted in "*actual loss* of a contract interest." *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F. Supp. 2d 1066, 1069 (S.D. Cal. 2000) (emphasis in original); *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 471 (8th Cir. 2009); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001); *Garrett v. Tandy Corp.*, 295 F.3d 94, 102 (1st Cir. 2002). In the context of service and retail establishments, courts have declined to find § 1981 violations where the plaintiffs were "denied neither admittance nor service, nor were they asked to leave." *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996); *see also Harrison v. Denny's Rest., Inc.*, No. 96-cv-0343-PJH, 1997 WL 227963, at *4 (N.D. Cal. Apr. 24, 1997) ("[P]lainiff has not shown that Denny's denied him service."); *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 81 (E.D. La. 1994) ("[P]laintiff was not denied admittance nor service—his service was merely slow."); *Stearnes v. Baur's Opera House, Inc.*, 788 F. Supp. 375, 378 (C.D. Ill. 1992) ("Plaintiff has not provided any evidence that the manager refused Plaintiff *admittance* to the bar or *service* while he was there.") (emphasis in original).

Here, Plaintiff's allegations consist of a series of rude and vulgar comments, increased attention to Plaintiff by floor supervisors and dealers, and occasions on which Defendant's employees were reassigned once Plaintiff became the "hot shooter" at the table. Plaintiff does not allege, however, that he was ever denied service, forced to leave a craps table, or otherwise prevented from patronizing any part of Defendant's establishments. Accordingly, to the extent Plaintiff's claim is premised upon poor service and a disturbing atmosphere, it necessarily fails.

The Court turns next to Plaintiff's allegation that Defendant's employee, Brent, refused to pay him and Ronnie, Plaintiff's African-American acquaintance, their winnings. Assuming this is sufficient to satisfy the third prong of Plaintiff's prima facie case,[5] this allegation nevertheless fails because Plaintiff does not plead anything to suggest this conduct was motivated by race. Indeed, the cases Plaintiff relies upon are distinguishable on this basis. For example, Plaintiff cites *Perry v. Burger King Corp.*, where the Court held that an African-American customer of the defendant's restaurant stated a § 1981 claim because the defendant's employees refused to let plaintiff use the restroom but allowed white patrons to do so. 924 F. Supp. 548, 551–52 (S.D.N.Y. 1996). In addition, the plaintiff in that case alleged that both the employees, as well as the manager, used racial epithets as they argued over access to the restroom. *Id.* at 551. Plaintiff also cites *Singh v. Wal-Mart Stores, Inc.*, where the court recognized that a store's refusal to accept an item for return or exchange based on race may support a § 1981 action. No. 98-cv-1613, 1999 WL 374184, at *6 (E.D. Pa. June 10, 1999). In that case, however, the court found no violation because the plaintiff failed to establish that similarly situated persons of other races or ethnicities received preferential treatment. *Id.* at *7–9. Here, the Complaint is without an allegation that similarly situated non-African American

---

[5] As Defendant points out, Plaintiff does not allege that Brent refused payment. (Reply 3:27–4:8). Rather, Plaintiff alleges Ronnie brought the omission to Brent's attention, who responded "I wouldn't [pay] if I didn't have to." (*See* Compl. ¶ 66).

Page 8 of 11

patrons were paid their winnings or any other accompanying allegation that Brent's failure in this regard was motivated by Plaintiff's race.

Even if Plaintiff could establish the elements of a § 1981 claim, however, Plaintiff's Complaint is deficient in a more fundamental respect. It is well established that a "parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) (citation omitted). A parent corporation may be "directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *Bestfoods*, 524 U.S. at 72). A corporation may be liable, however, where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of." *Bestfoods*, 524 U.S. at 64 (internal quotation marks and citation omitted).

Here, Plaintiff has not alleged facts to plausibly establish that Defendant may be liable for the acts of its subsidiary. There is no suggestion that Defendant abdicated its role as a parent corporation, the casino employees' conduct can be traced to Defendant, or that Defendant participated in any way in the alleged wrongs. Accordingly, Plaintiff has failed to establish that Defendant may be liable for the alleged § 1981 violations. The Court, therefore, grants Defendant's Motion to Dismiss without prejudice.

## IV. <u>LEAVE TO AMEND</u>

Plaintiff moves to amend his Complaint to include additional allegations with respect to his claim under 42 U.S.C. § 1981. (*See* Mot. to Am., ECF No. 20). Defendant opposes Plaintiff's Motion on the basis that Plaintiff's proposed amended complaint suffers from the same deficiencies as those in Plaintiff's operative Complaint. (Resp. to Mot. to Am. 3:10–6:4, ECF No. 21).

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court agrees with Defendant that granting Plaintiff leave to file his proposed amended complaint would be futile. The new allegations primarily consist of further occasions on which Plaintiff noticed increased attention from floor supervisors and dealers. (*See* Proposed Am. Compl. ¶¶ 105–07, 110, 116, 120, 123, 128–32, 136, Ex. A to Mot. to Am., ECF No. 20-1). Plaintiff also inserts a new allegation that Defendant's employees shared gossip about a fabricated affair between Plaintiff and a baccarat dealer and that the employees may attempt to set him up for a "smear campaign" and "character assassination." (*Id.* ¶¶ 95–97, 148–51).

Absent from the new allegations, however, is any assertion that Plaintiff was deprived of any service or benefit associated with patronizing Defendant's casinos or using his player's card. Moreover, the new allegations also fail to identify anything that could plausibly be construed as racial discrimination or anyway in which similarly situated persons, who are not members of Plaintiff's protected class, received services to which Plaintiff was not privy. Furthermore, there is no new allegation that would cure the deficiency with respect to Defendant's liability as a parent corporation. Therefore, the Court denies Plaintiff's Motion for Leave to Amend without prejudice.

Plaintiff may, however, file a new amended complaint if he can plead sufficient facts to establish that Defendant may be liable to Plaintiff for § 1981 violations. If Plaintiff elects to do so, Plaintiff shall file a new amended complaint within twenty-one (21) days of this Order.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 6), is **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Adjudicate Defendant's Motion to Dismiss as a Motion for Summary Judgment, (ECF No. 9), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend, (ECF No. 20), is **DENIED without prejudice**. If Plaintiff chooses to do so, Plaintiff may file a new amended complaint in this action within twenty-one (21) days of this Order.

**DATED** this \_\_11\_\_ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge